IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| Dakota, Missouri Valley and Western Railroad Inc., | ) ) ) | **ORDER GRANTING JMA RAIL PRODUCTS CO. AND JMA RAILROAD SUPPLY CO.'S MOTION TO DISMISS** |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 1:06-cv-002 |
| JMA Rail Products Co., JMA Railroad Supply Co., and Miba Bearings U.S., LLC, a foreign limited liability company, | ) ) ) ) ) | |
| Defendants. | ) | |

_____

Before the Court is Defendants' JMA Rail Products Co., and JMA Railroad Supply Co.'s, (collectively referred to as JMA) Motion to Dismiss filed on January 27, 2006. The motion is opposed by the plaintiff, Dakota, Missouri Valley and Western Railroad Inc. For the following reasons, the Defendants' motion is granted.

I.      **BACKGROUND**

The plaintiff originally commenced this action in state court in the District Court of Burleigh County. On January 19, 2006, Defendant Miba Bearings U.S., LLC (Miba) removed the action to the United States District Court for the District of North Dakota. See Docket No. 1. The pleadings establish that the plaintiff purchased upper rod bearings from JMA to be installed in locomotive engines and that the upper rod bearings were manufactured by Miba.

In the complaint, the plaintiff alleged that JMA breached implied warranties of merchantability and fitness for a particular purpose. See Docket No. 1-3. The alleged breach of

1

warranty claims stemmed from the failure of the upper rod bearings after installation in and operation of two locomotive engines. See Docket No. 1-3. The plaintiff further alleged that the failure of the rod bearings resulted in damages including loss of revenue from the use of the locomotives as well as the cost of parts and labor to rebuild the locomotive engines. See Docket No. 1-3.

On January 27, 2006, JMA filed an Affidavit of Seller Pursuant to Section 28-01.3-04 of the North Dakota Century Code, which the Court treated as a motion to dismiss pursuant to the Order Re Caption Correction and Additional Briefing Schedule dated April 14, 2006. See Docket Nos. 15, 20.

## II.     STANDARD OF REVIEW

The standard for a district court to employ in ruling on a motion to dismiss is well-established. Crumpley-Patterson v. Trinity Lutheran Hosp., 388 F.3d 588, 590 (8th Cir. 2004). "A district court must accept the allegations contained in the complaint as true, and all reasonable inferences from the complaint must be drawn in favor of the nonmoving party." Id. (citing Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Hafley v. Lohman, 90 F.3d 264, 266 (8th Cir. 1996)). "[D]ismissal is inappropriate 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" McCormack v. Citibank, N.A., 979 F.2d 643, 646 (8th Cir. 1992) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). "A motion to dismiss should be granted 'as a practical matter . . . only in the unusual case in which there is some insuperable bar to relief.'" Strand v. Diversified Collection Service, Inc., 380 F.3d 316, 317 (8th Cir. 2004) (citing Frey v. Herculaneum, 44 F.3d 667, 671 (8th Cir. 1995) (quoting Bramlet v. Wilson, 495 F.2d 714, 716 (8th Cir. 1974))). It is clear under the

Federal Rules that it is not necessary to plead every fact with formalistic particularity.  BJC Health System v. Columbia Gas. Co., 348 F.3d 685, 688 (8th Cir. 2003).  "A pleading which sets forth a claim for relief . . . shall contain a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a).

### III.     LEGAL DISCUSSION

The motion to dismiss is made pursuant to specific statutory authorization under Section 28-01.3-04 of the North Dakota Century Code.  Section 28-01.3-04 provides as follows:

1.  In any products liability action maintained against a seller of a product who did not manufacture the product, the seller shall upon answering or otherwise pleading file an affidavit certifying the correct identity of the manufacturer of the product allegedly causing the personal injury, death, or damage to property.

2.  After the plaintiff has filed a complaint against the manufacturer and the manufacturer has or is required to have answered or otherwise pleaded, the court shall order the dismissal of the claim against the certifying seller, unless the plaintiff can show any of the following:

   a.  That the certifying seller exercised some significant control over the design or manufacture of the product, or provided instructions or warnings to the manufacturer relative to the alleged defect in the product which caused the personal injury, death, or damage to property.
   b.  That the certifying seller had actual knowledge of the defect in the product which caused the personal injury, death, or damage to property.
   c.  That the certifying seller created the defect in the product which caused the personal injury, death, or damage to property.

3.  The plaintiff may at any time prior to the beginning of the trial move to vacate the order of dismissal and reinstate the certifying seller if the plaintiff can show any of the following:

   a.  That the applicable statute of limitation bars a product liability action against the manufacturer of the product allegedly causing the injury, death, or damage.

    b.  That the identity of the manufacturer given to the plaintiff by the certifying defendant was incorrect.

N.D.C.C. § 28-01.3-04 (2005).

  Section 28-01.3-04(2) of the North Dakota Century Code provides that the court "shall order the dismissal of the claim against the certifying seller" when the plaintiff has filed a complaint against the manufacturer and the manufacturer has or is required to have answered, unless the plaintiff can show that the seller fits into one of the exceptions set forth in Section 28-01.3-04(2)(a-c). It is undisputed that JMA is a "seller"[1] and that Miba is a "manufacturer"[2] as defined by Section 28-01.3-01. Further, Miba has answered the complaint, and, as required under Section 28-01.3-04(1), JMA has filed an affidavit certifying the correct identity of the manufacturer. See Docket No. 20. Thus, the requirements of Section 28-01.3-04(2) have been satisfied. As a result, it is clear that the Court shall dismiss the claims against the certifying seller (JMA) unless the plaintiff can show that an exception applies under Section 28-01.3-04(2)(a-c). The burden is on the plaintiff to show that JMA fits into one of the exceptions and is not merely a passive seller.

---

[1] The term "seller" is defined as follows:

> "Seller" means any individual or entity, including a manufacturer, wholesaler, distributor, or retailer, who is engaged in the business of selling or leasing any product for resale, use, or consumption. . . .

N.D.C.C. § 28-01.3-01(3).

[2] The term "manufacturer" is defined as follows:

> "Manufacturer" means a person or entity who designs, assembles, fabricates, produces, constructs, or otherwise prepares a product or a component part of a product prior to the sale of the product to a user or consumer. The term includes any seller of a product who is owned in whole or significant part by the manufacturer or who owns, in whole or significant part, the manufacturer.

N.D.C.C. § 28-01.3-01(1).

The subcategories of Section 28-01.3-04(2) would prevent dismissal of the claim against the non-manufacturing seller if the plaintiff can show that the seller exercised significant control over the design or manufacture of the product, provided instructions or warnings to the manufacturer concerning the alleged defect, had actual knowledge of the defect, or created the defect. N.D.C.C. Section 28-01.3-04(2)(a-c). The plaintiff has neither alleged, shown, nor attempted to show that JMA satisfied any of these elements. Instead, the plaintiff has based its claims against JMA on breach of warranty grounds and merely alleged that JMA knew of the particular purpose for which the rod bearings were purchased. To support a finding that JMA does not fit within a subcategory of section (2), JMA has filed an affidavit stating that it ordered the upper rod bearings from Miba and that the bearings were shipped from Miba to the plaintiff without coming into the possession or control of JMA. See Docket No. 18, ¶ 2. This is further supported by Miba's admission that JMA ordered bearings from Miba which were shipped directly from Miba to the plaintiff without coming into possession or control of JMA. See Docket No. 3, ¶ 23, and Docket No. 11, ¶ 2.

Based on the complaint and the answers submitted by the parties, and after a careful review of the entire record, the Court finds that JMA was a passive, non-manufacturing seller and that the requirements of Section 28-01.3-04(2) have been satisfied. The Court further finds that JMA is entitled to dismissal with regard to the product liability claims.

.    **A.    BREACH OF WARRANTY CLAIMS**

The question that remains is whether the dismissal language of Section 28-01.3-04(2) encompasses the breach of warranty claims asserted against JMA as a "seller." By its terms, Section 28-01.3-04(2) applies only to a product liability action which is defined as follows:

> "Product liability action" means any action brought against a manufacturer or seller of a product, <u>regardless of the substantive legal theory or theories upon which the action is brought</u>, for or on account of personal injury, death, or property damage caused by or resulting from the manufacture, construction, design, formula, installation, preparation, assembly, testing, packaging, labeling, or sale of any product, or the failure to warn or protect against a danger or hazard in the use, misuse, or unintended use of any product, or the failure to provide proper instructions for the use of any product.

N.D.C.C. § 28-01.3-01(2) (emphasis added).

The North Dakota Products Liability Act does not distinguish between the type of claim that is being brought, but rather is focused on relieving the passive, non-manufacturing seller from liability, "regardless of the substantive legal theory or theories upon which the action is brought." N.D.C.C. § 28-01.3-01(2). Under the plain meaning of the statute, a "'product liability action' means any action brought against a manufacturer or seller of a product, <u>regardless of the substantive legal theory or theories upon which the action is brought</u>." N.D.C.C. § 28-01.3-01(2). The purpose of Section 28-01.3-04 is to allow for the dismissal of non-manufacturing sellers in cases where they did nothing more than resell a product claimed to be defective, and had no involvement in the design manufacturing, or labeling of the product. To that end, Section 28-01.3-04(2) operates to dismiss the breach of warranty claims asserted by the plaintiff against JMA in this product liability action.

Having carefully reviewed the relevant statutory and case law, the Court finds that a product liability action under Section 28-01.3-01(2) of the North Dakota Century Code includes claims based on breach of warranty. The dismissal language of Section 28-01.3-04(2) includes the dismissal of breach of warranty claims against a non-manufacturing seller who has certified that it meets the requirements of that statutory provision.

**IV.   CONCLUSION**

The Court expressly finds that the claims or legal theories asserted against JMA in the complaint are entitled to dismissal under Section 28-01.3-04 North Dakota Century Code. Accordingly, the Motion to Dismiss filed by defendants JMA Rail Products Co. and JMA Railroad Supply Co. (Docket No. 20) is **GRANTED**.  The only remaining claims are those asserted by the plaintiff against Miba Bearings U.S., LLC and the cross-claim of the JMA defendants against Miba.  The Clerk of Court is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

Dated this 9th day of August 2006.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, Chief Judge
United States District Court